Jason R. Naess, ISBN 8407
Assistant United States Trustee
Andrew S. Jorgensen, ISBN 8695
United States Department of Justice
Office of the United States Trustee
720 Park Blvd, Ste. 220
Boise, Idaho 83712
(208) 334-1300
(208) 334-9756 [Facsimile]
ustp.region18.bs.ecf@usdoj.gov

Attorneys for the Acting United States Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| In re:<br><br>MYLES TORTEL<br><br>Debtor. | Case No. 20-40785-JMM<br><br>Chapter 11 (subchapter V) |

**UNITED STATES TRUSTEE'S MOTION FOR RETURN OF
DEBTOR'S COUNSEL'S FEES (11 U.S.C. § 329)**

The Acting United States Trustee respectfully moves that an order be entered under 11 U.S.C. § 329(b) directing debtor's counsel, Aaron Tolson, to return fees received in relation to this case, because his compensation exceeds the reasonable value of any legal services, as further set forth below.

**A.    Background**

1.    On October 6, 2020, Debtor Myles Tortel, filed through attorney Mr. Tolson, an individual Chapter 11 Petition and indicated an election to proceed under Subchapter V of Chapter 11. Dkt. No. 1. On the same day, Debtor also filed Schedules, Dkt. No. 3; Statement of Financial Affairs, Dkt. No. 4; Disclosure of Compensation, Dkt. No. 8; Motion for Application to Approve Employment of Attorney, Dkt. No. 13, with Affidavit in Support, Dkt. No. 13-1;

along with other first-day filings such as creditor lists.

2. Mr. Tolson's Disclosure of Compensation indicated that he agreed to accept a flat fee, but it did not disclose the amount of the flat fee. It did not indicate acceptance of any retainer. It did not disclose whether the Debtor owed Mr. Tolson for any work done prior to the instant Chapter 11 bankruptcy. Dkt. No. 8 at 1.

3. The United States Trustee filed an Objection to the Application to Approve Employment of Attorney on October 29, 2020. Dkt. No. 26.

4. Mr. Tolson filed an Amended Motion for Application to Approve Employment of Attorney on November 19, 2020. Dkt. No. 41. The November 19, 2020 filing disclosed for the first time that Mr. Tolson had received a retainer from Mr. Tortel. It did not disclose when Mr. Tolson received the retainer—whether before or after the Petition was filed. The Amended Application added some information regarding the arrangement for compensation: "The arrangement for compensation is a standard one (See affidavit) and the debtor paid $5,000 up front for the bankruptcy which was used for the filing fee of $1717.00 and the remaining amount of $3,282.00 was used to prepare the schedules and for other work done, so there is no amount of retainer left. . . ." Dkt. No. 41 at 3; *see also* Dkt. No. 41-1 at 2, ¶ 4.

5. The Amended Motion disclosed, "In addition, Mr. and Mrs. Tortel owed some for work done on other cases, which is less than $10,000 and which they paid $5,000 on prior to filing, and prospective counsel for debtor therefore believes it is expressly not a conflict in Sub-chapter V." Dkt. No. 41 at 3. No other explanation was given to support Mr. Tolson's disinterestedness despite being owed money from Debtor.

6. The Amended Motion also attached a form fee agreement with Mr. Tolson's Affidavit in Support. This was unsigned and undated and includes various provisions that may not be

**US Trustee § 329 Motion to Return Fees –2**

applicable or compatible with representation of a Chapter 11 debtor. Dkt. No. 41-1 at 5–14.

7.      The Court has not entered an Order approving the employment of Aaron Tolson for the Debtor, Myles Tortel.

8.      The United States Trustee had to schedule multiple § 341(a) first meeting of creditors in this case, including on November 13, 2020, November 30, 2020, and December 16, 2020.[1] Each of the continuations was necessary because Debtor's Petition, Schedules, or SOFA or testimony regarding these initial filings were incomplete.

9.      Debtor and his spouse, Venita Tortel, have a history of multiple filings. A historical overview supports that they have filed serial bankruptcies, often to avoid foreclosure, as posited in the Motion to Dismiss filed by home loan creditor Wilmington Savings Fund. Dkt. No. 28 at 1 ("For the better part of past 5 years, Myles Tortel ("Debtor") and his wife Venita Tortel have been trying to avoid foreclosure on their primary residence . . . through state court litigation and now through repeated bankruptcy filings"); *see also* Dkt. No. 54, "Statement of Facts."

10.     The Debtor and his wife have a long history of filing bankruptcy. The longitudinal context of this history does not support good justification for filing the Chapter 11 Subchapter V bankruptcy in this case. Bankruptcy Court records show the following cases were filed by either Myles or Venita Tortel or businesses they operated within the last 10 years:[2]

   a) **December 10, 2010, Chapter 7 Bankruptcy case No. 10-42166-JDP.** The secured creditor on the home loan (Wells Fargo, predecessor of secured creditor in this case,

---

1. The 341 meeting was also continued to January 22, 2021, then to February 25, 2021, and then to March 30, 2021. These continuations were to keep the 341 meeting open while it appeared Debtor and a secured creditor were working toward a stipulation to dismiss the case.
2. A helpful and more detailed summary is also found at Dkt. No. 54 (Statement of Facts filed by Wilmington Savings Fund). Debtor has not disputed the Statement of Facts and has signed a Stipulation agreeing to the Statement of Facts as a basis for dismissal of this case. Dkt. No. 75 at 1, 3, and ¶ 1. The Stipulation stated, "Myles Tortel . . . hereby stipulate[s] and agrees to the Statement of Facts, ¶¶ 1-68, filed by Secured Creditor on December 29, 2020 as D[kt]. No. 54 and that the Court may rely upon those facts as a basis for the stipulated relief stated herein."

Wilmington Savings Fund) moved for relief from stay, after which Venita Tortel voluntarily moved to dismiss.[3]

b) **February 22, 2012, Chapter 7 Bankruptcy case 12-40188-JDP by Myles Tortel on behalf of Tortel Properties, LLC.** This case was dismissed under § 707(a)(3), for failure to file initial documents required under § 521(a).[4]

c) **May 17, 2012: Chapter 7 Bankruptcy case No. 12-40698-JDP by Venita Tortel.** Discharge was denied based on the outcome of adversary case No. 14-08061-JDP.[5] Aaron Tolson represented Venita Tortel in this case.

d) **February 1, 2013: Chapter 13 Bankruptcy Case No. 13-40105-JDP**. This case was dismissed by the month following filing, on motion of the Chapter 13 trustee, March 8, 2013.

e) **June 20, 2013: Chapter 13 Bankruptcy Case No. 13-40782-JDP by Venita Tortel.** This case was filed while the 2012 Chapter 7 bankruptcy case was ongoing. The Court ordered a two-year bar on Venita Tortel from filing bankruptcy.

f) **January 29, 2014: Chapter 13 Bankruptcy Case No. 14-40066-JDP.** Foreclosure Trustee's Sale was scheduled January 30, 2014. *See* Dkt. No. 28 at 3, ¶ 4. Aaron Tolson represented Myles Tortel in this case.

g) **September 14, 2017: Chapter 11 Bankruptcy Case No. 17-40827-JDP.** Aaron Tolson represented Myles Tortel in this case. A foreclosure Trustee's Sale was scheduled September 15, 2017. *See* Dkt. No. 28 at 5, ¶ 12. Based on stipulated treatment of Wilmington Savings fund under a Chapter 11 Plan, Debtor (Myles Tortel) agreed to new

---

3  *See* Case 10-42166-JDP, Dkt. Nos. 39 and 107.
4. Case No. 12-40188-JDP, Doc. 16 and Doc. 22.
5. *See* Dkt. Nos. 42 and 107 in the Chapter 7 case and Dkt. Nos. 13 and 19 in adversary case No. 14-08061-JDP.

**US Trustee § 329 Motion to Return Fees –4**

terms for the home loan—monthly payments for a contractual term through May 1, 2039. *See* Dkt. No. 28 at 85-88.[6] These terms were in effect under the duration of the Chapter 11 Plan in the 2017 case when Debtor filed his 2020 Chapter 11 bankruptcy petition. However, Wilmington Savings Fund (through Carrington Mortgage Services) had filed a Declaration re Non-Compliance with the 2017 Chapter 11 plan based on the Tortels' failure to maintain monthly payments. Dkt. 28 at 80-82.

h) **October 6, 2020: Chapter 11 (Subchapter V) Bankruptcy Case No. 20-40785-JMM.** When this (above-captioned) case was filed, the Chapter 11 Plan terms from the 2017 case were still in effect. Because Debtor had not made home loan payments pursuant to the 2017 plan, a trustee's foreclosure sale was scheduled October 7, 2020. *See* Dkt. No. 28 at 6, ¶ 23.

**B.    Applicable law**

11. The Bankruptcy Code provides the Court may cancel a fee agreement between a debtor and his or her counsel or order the return of any such payment, to the extent the compensation "exceeds the reasonable value" of the attorney's services. 11 U.S.C. § 329(b). Fees are to be returned to the bankruptcy estate if they were to be paid by or on behalf of the debtor under a Chapter 11 plan or would have been property of the estate, or to the entity that paid the fees. § 329(b)(1).

12. Section 330(a)(1)(A) also limits compensation to "reasonable compensation for actual, necessary services rendered by the . . . attorney." Section 330(a)(4)(A)(ii) provides, in part, "the court shall not allow compensation for . . . services that were not—reasonably likely to benefit the debtor's estate, or necessary to the administration of the case."

---

6. *See also* Case 17-40827-JMM, Dkt. No. 80 at 6, Dkt. Nos. 93 and 109.

**US Trustee § 329 Motion to Return Fees –5**

13. As explained in a 2008 Idaho Bankruptcy Court case, an important purpose of § 329 is to ensure that attorneys provide competent representation to debtors. *In re Dean*, 401 B.R. 917, 923 (Bankr. D. Idaho 2008). The Court reviews an attorney's fee to determine whether it is reasonable under the circumstances and must consider the nature of the services and the competence of the performance. If a bankruptcy court finds that an attorney fails to competently perform his or her duties, an order requiring the attorney to disgorge fees pursuant to § 329(b) is proper. "In other words, in considering the "value" of the services provided to a debtor by an attorney, the Court must consider the quality, not just the quantity, of those services." *Id.*, citing *In re Grant*, 14 B.R. 567, 569 (Bankr. S.D.N.Y. 1981); *see also In re Wilson*, 11 B.R. 986, 991 (Bankr. S.D.N.Y.1981) (finding that an attorney's representation of the debtor was neither competently performed nor zealously provided and ordering that all fees paid to the attorney be remitted to the debtor).

14. The Court may determine whether fees are excessive pursuant to a party's motion or on its own initiative after notice and a hearing. FED. R. BANKR. P. 2017. The Court has the power to order the return of all attorney's fees for inadequate representation under 11 U.S.C. §§ 105 and 329, and Rule 2017. *In re West*, 398 B.R. 629, 646 (Bankr. E.D. Ark. 2009); *see also, e.g., In re Ludwick*, 185 B.R. 238, 244 (Bankr. W.D. Mich. 1995) (en banc).

15. Section 329 is designed to protect debtors from misconduct by their attorneys and the Bankruptcy Court has "broad and inherent authority to deny any and all compensation when an attorney fails to meet the requirements of [§§ 327, 329, 330 and 331 of the Bankruptcy Code]." *In re Lewis*, 113 F.3d 1040, 1045-46 (9th Cir. 1997) (reviewing an attorney fee disgorgement order under the abuse of discretion standard).

16. The Court may find, where an attorney's services for debtor were negligently performed

**US Trustee § 329 Motion to Return Fees –6**

and of no value to debtor, and thus attorney may be entitled to retain no funds received. *See, e.g., In re Richardson*, 14 B.R. 755 (Bankr. E.D. Pa. 1981).

17.     The Court may look at the results achieved by the attorney's representation of a Debtor in determining whether return of fees for pre-filing services is appropriate. Further, bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court. *Hale v. U.S. Trustee*, 509 F.3d 1139, 1148 (9th Cir. 2007), quoting *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.),* 77 F.3d 278, 284 (9th Cir.1996).

18.     Mr. Tolson bears the burden of justifying his fees under § 329(b). *See In re Castorena*, 270 B.R. 504, 515 (Bankr. D. Idaho 2001). It is the same burden as demonstrating entitlement to fees under section 330 of the Bankruptcy Code. *See id.* "Failure to meet this burden supports reduction or denial of the compensation sought." *Id.* The Court has "wide discretion in determining reasonable compensation." *Id.*

19.     Federal Rule of Bankruptcy Procedure 2016(b) requires disclosure of compensation paid or promised to file and transmit to the United States Trustee within 14 days after the order for relief. (The initial disclosure did not actually disclose compensation but said "see fee agreement." Dkt. No. 8. The actual disclosure by Mr. Tolson of compensation was tardy, made November 19, 2020. Dkt. 41.) Violation of Rule 2016(b) is sufficient to warrant a bankruptcy court's order requiring disgorgement of fees. *In re Park-Helena Corp.*, 63 F.3d 877, 881 (9th Cir. 1995); *see also In re Fraga*, 210 B.R. 812, 822 (B.A.P. 9th Cir. 1997), holding modified on other grounds by *In re Reynoso*, 315 B.R. 544 (B.A.P. 9th Cir. 2004). The consequences of an attorney's violation of the disclosure requirements regarding fees include denial of all fees requested, or disgorgement of fees already received. *In re Fraga*, 210 B.R. at 822.

20.     Section 1195 of the Bankruptcy Code provides, "Notwithstanding section 327(a) of this

**US Trustee § 329 Motion to Return Fees –7**

title, a person is not disqualified for employment under section 327 of this title, by a debtor solely because that person holds a claim of less than $10,000 that arose prior to commencement of the case." *See* Dkt. No. 41 at 2, ¶ 4 (wherein Mr. Tolson cited the amount owed him by the Tortels as being less than $10,000). Regarding Mr. Tolson's representation of Myles Tortel while he had done legal work for Mr. or Mrs. Tortel and for which Debtor owed Mr. Tolson money, the provision in § 1195 does not appear to otherwise override failure to disclose compensation or possible disinterestedness.

      **C.**    **Mr. Tolson should return fees due to his deficient preparation of Petition, Schedules, Statement of Financial Affairs, Employment Application, and other initial disclosures and reports.**

21.    Mr. Tolson provided deficient representation of the debtor (1) in his preparation of initial filings and reporting and disclosure regarding his own employment, and (2) in his advising the Debtor at the outset of the case including the proper purposes of bankruptcy. Based on the discussion below, because the compensation for pre-petition work paid to Mr. Tolson exceeds the reasonable value of such services, particularly where Mr. Tolson had represented the Tortels in multiple previous bankruptcies and should have been well equipped to provide thorough and economically efficient services to the Tortels, Mr. Tolson should be ordered to return the retainer and fees he received, and any fee agreement should be canceled.

      **1. Deficiencies in initial documents**

22.    Initial documents in this case do not meet minimum expectations at the outset of a case, especially where Debtor's attorney had accepted a $5,000 retainer and deducted $3,282.00 for pre-petition work "to prepare the schedules and for other work done" at $250 per hour. Dkt. No. 41 at 3; see also Dkt. No. 41-1 at 2, ¶ 4. This fee total at this hourly rate would represent over 13 hours of attorney work. The following paragraphs enumerate problems with initial filings,

**US Trustee § 329 Motion to Return Fees –8**

documents, and reports that support the fees charged are not reasonable.

23.     The Petition and Schedules appeared to contain information that was copied and pasted from a prior bankruptcy case, but not checked for current accuracy. It is illustrative to compare the Petition, Schedules, and Statement of Financial Affairs from the 2017 Chapter 11 bankruptcy case (see Case No. 17-40827-JDP, Dkt. Nos. 1, 6,) with the Petition, Schedules, and Statement of Financial Affairs in this case. 20-40785-JMM, Dkt. Nos 1, 3, 4.

24.     There were no assets added to the 2020 schedules compared to the 2017 filing. *Compare* Only a few assets removed on the 2020 schedules.   For most assets that remained on the schedules in 2020 (in comparison with the 2017 schedules), the values were listed exactly the same as they were in 2017. The comparison suggests that minimal attorney time would be needed to review the changes in the schedules with Myles (and Venita) Tortel. Even though it would have taken minimal time to review the schedules with them and ensure accurate information Schedules, it appears that not even that was done.

25.     Schedules in both the 2017 and 2020 Chapter 11 cases inaccurately indicate that there are no creditors who have claims secured by property. *Compare* Dkt. No 3 at 10 *with* 17-40827-JDP Dkt. No. 1 at 27.

26.     At 341(a) first meetings of creditors, time was needed for the Debtor to address the status of several vehicles that had been, in some cases, sold before the 2020 bankruptcy was filed. *Compare* Dkt. No 3 at 3-4 *with* Case No. 17-40827-JDP, Dkt. No. 1 at 14-16. Other vehicles owned by the marital community were not listed. In another example, assets listed as "bonds, mutual funds, or publicly traded stocks" in 2017 (Dkt. No. 1 at 18, ¶ 18) were listed as retirement or pension accounts in 2020 Schedules. Dkt. No. 3 at 6, ¶ 21.

27.     The inclusion of Venita Tortel's name as Debtor 2 on the 2020 Schedules also suggests

**US Trustee § 329 Motion to Return Fees –9**

Mr. Tolson did not review the Schedules adequately with his clients. *See, e.g.,* Dkt. No. 3 at 3.

28.  This was not a complex case with requiring substantial work identifying and listing creditors, sources of income, executory contracts, and complex financial affairs. This is evident in the limited information in the 2020 Schedules and the carryover of information from 2017 Schedules (which Aaron Tolson filed as attorney for Debtor):

   a) Only eight creditors are included in the 2020 Schedules, many of which were carried over from the 2017 schedules.

   b) The Schedules do not include executory contracts or co-debtors. Dkt. No. 3 at 16-17 (Schedules G and H).

   c) Schedule I includes just one entry to describe Debtor's income. *Id.* at 18-19

   d) Schedule J is an exact copy, in terms of monthly expenses, from the 2017 Schedules. *Compare* Dkt. 3 at 20-22 *with* 17-40827-JDP Dkt. No. 1 at 37-38.

   e) Only three questions are answered in the entire (2020) Statement of Financial Affairs. Dkt. No. 4 at 5, 7, 10.

29.  Mr. Tolson failed to file, at the outset of the case, Employee Income Records. *See* Dkt. No. 20 (Deficiency Notice); *see also* Dkt. No. 25. Significant cash assets held in a business entity (Eagle Rock Retreat) by Debtor and his wife were not listed on schedules. *See* Dkt. 45 at 4 (Amended Schedules following questioning at a § 341(a) meeting, listing "Eagle Rock Credit Union" as an account holding $37,000; *see id.* at 4, ¶ 17.1).

30.  Mr. Tolson's Employment Application and related materials had several deficiencies. *See* Dkt. Nos. 13 and 13-1. It lacked evidence of proper service, lacked disclosure of the retainer and the proposed arrangement for compensation, and lacked disclosure of facts (including amounts owing from the client to the attorney) regarding Mr. Tolson's connections with the Debtor.

**US Trustee § 329 Motion to Return Fees –10**

Similar to the Petition and Schedules, much of the information provided was similar to what was provided in the 2017 Chapter 11 case. *Compare* Dkt. Nos. 13 and 13-1 *with* 17-40827-JDP Dkt. Nos. 14 and 14-1.

31.    To date, the Court has not entered an order approving the employment of Mr. Tolson as Debtor's attorney.

32.    Regardless of the errors or omissions in the initial documents in this case, an overview of the Petition, Schedules, Statement of Financial Affairs, and Employment Application shows these documents required minimal preparation, such that $3,282 in attorney fees for pre-petition work is not a reasonable value for the services in preparing those documents. *See* 11 U.S.C. § 329(b); *see* Dkt. No. 41 at 3; Dkt. No. 49 at 3.

33.    While arranging for the Initial Debtor Interview ("IDI"), the United States Trustee had to make repeated requests for initial reporting requirement documents prior to the IDI.[7] After the IDI, the United States Trustee had to request additional documents, verify information, suggest arranging accounts, and suggest amendments to initial filings that apparently should have been completed at the outset of the case. As documented in an email from Jerad Crawford, Bankruptcy Analyst at the United Trustee's office, sent November 10, 2020, these follow-up items included:

1) Amend schedules to take Venita [Tortel] off pages 3 & 10 of Docket no. 3 (Schedules).
2) Rule 2015.3 report for All Ways Trucking needs to be filed – due 7 days prior to 341 meeting.
3) Review for possible amendment to add vehicle sold within one year of filing – 1992 Saab
4) Review for possible amendment to Schedule B - add vehicles.
5) Review for possible amendment to Schedule B – add Wells Fargo bank account with balance as of filing – delete Chase Bank as this is the business account
6) Review for possible amendment to SOFA – Q. 4 – no income listed, Q. 27 no ownership of a business listed.
7) Provide bank statements for the 90 days prior to filing.

---

7. Declaration of Andrew Jorgensen, Exhibits B and C.

**US Trustee § 329 Motion to Return Fees –11**

8) Provide the Debtor in Possession bank account information for the Debtor.
9) File the appropriate §1116 small business financial records and documents with the Court since the Debtor has elected to be a small business.
10) Verify whether the Debtor is a guarantor on the SBA Loan for $130,000 on Schedule F.[8]

34.   The United States Trustee's office also needed to make requests for initial information and documentation at the 341 meetings. These filings reasonably could have been anticipated and managed by Debtor's counsel as part of pre-petition legal work, for which Mr. Tolson had billed $3,282.

35.   It is understandable that a Chapter 11 case may have loose ends after filing; however, in this case loose ends were an excessive tangle. Significant deficits in the Schedules and reporting supports that the compensation taken by Mr. Tolson for pre-petition work was not reasonable.

36.   Because Mr. Tolson's representation of the Debtor was inadequate for all the reasons listed above, he should be ordered to return all attorney fees and unused retainer funds. *See In re West*, 398 B.R. at 646; *In re Ludwick*, 185 B.R. at 244.

### F.   Conclusion and request for relief

For the reasons set out above, the United States Trustee believes the compensation paid or promised to Mr. Tolson exceeds the reasonable value of such services.

WHEREFORE, The United States Trustee asks the Court to order fees be returned to the bankruptcy estate or to the entity that made the payment, pursuant to 11 U.S.C. § 329(b).

The United States Trustee requests that an Order be entered directing attorney Aaron Tolson to return all fees received in this case and cancelling any fee agreement between the Debtor and Mr. Tolson. If Mr. Tolson objects to this Motion, the United States Trustee requests he be Ordered to provide an accounting and documentation evidencing any and all fees paid or

---

8  Declaration of Andrew Jorgensen, Exhibits A, D, E.

promised to him, and for such other and further relief as the Court deems proper.

Dated: March 19, 2021          GREGORY M. GARVIN
         Acting United States Trustee, Region 18

         /S/ Andrew Jorgensen
         ANDREW S. JORGENSEN

**US Trustee § 329 Motion to Return Fees –13**

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on March 19, 2021, I filed the foregoing electronically through the CM/ECF system, which causes the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

  Matthew W Grimshaw
  matt@grimshawlawgroup.com, ID22@ecfcbis.com

  US Trustee
  ustp.region18.bs.ecf@usdoj.gov

  Lewis Nishioka Stoddard on behalf of Creditor Wilmington Savings Fund Society, FSB, as trustee of Upland Mortgage Loan Trust A
  lewis@hwmlawfirm.com,

  Aaron J Tolson on behalf of Debtor Myles Tortel
  ajt@aaronjtolsonlaw.com

Others receiving notice via CM/ECF

                /S/
               ANDREW S. JORGENSEN

**US Trustee § 329 Motion to Return Fees –14**